13-2006-cv
*Ingravallo v. Hartford Life and Accident Ins. Co.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of April, two thousand fourteen.

PRESENT:
        PIERRE N. LEVAL,
        SUSAN L. CARNEY,
                *Circuit Judges*,
        KATHERINE POLK FAILLA,
                *District Judge.*[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DIANA INGRAVALLO,

                *Plaintiff-Appellee*,

       -v.-                                                    No. 13-2006-cv

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,
AS ADMINISTRATOR OF THE DELTA AIRLINES INC., LONG
TERM DISABILITY GROUP POLICY,

                *Defendant-Appellant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR PLAINTIFF-APPELLEE:**        VALERIE L. NORWOOD (Marc S. Whitehead, *on the brief*), Marc Whitehead & Associates, LLP, Houston, TX.

---

[*] The Hon. Katherine Polk Failla, of the United States District Court for the Southern District of New York, sitting by designation.

CERTIFIED COPY ISSUED ON 04/24/2014

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | MICHAEL H. BERNSTEIN (Matthew P. Mazzola, *on the brief*), Sedgwick LLP, New York, NY. |

Appeal from the United States District Court for the Eastern District of New York (Block, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the April 19, 2013 judgment of the District Court is **REVERSED** and the cause is **REMANDED** with directions to enter judgment for Hartford.

Defendant-Appellant Hartford Life and Accident Insurance Co. ("Hartford") appeals from the judgment of the District Court denying Hartford's motion for summary judgment on the administrative record, granting summary judgment for Plaintiff-Appellee Diana Ingravallo, and awarding Ingravallo approximately $19,000 in benefits on her claim pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq. See Ingravallo v. Hartford Life & Acc. Ins. Co.*, 10-cv-5150 (FB) (JO), 2013 WL 1346283 (E.D.N.Y. Apr. 3, 2013). We assume the parties' familiarity with the underlying facts and procedural history, to which we refer only as necessary to explain our decision to reverse.

## BACKGROUND

Beginning in August 1997, Diana Ingravallo was employed by BDP International ("BDP") as an air import coordinator.[1] Her full-time, sedentary job required her to sit for most of an eight-hour day, and, occasionally, to lift or carry a small amount of weight. Also in the late 1990s (exactly when is unclear), Ingravallo was diagnosed with relapsing-remitting multiple sclerosis ("MS"), but she was able to work as a coordinator at BDP until May 2005, when she suffered an exacerbation that caused her to experience difficulty walking, among other serious symptoms. In consequence, her treating neurologist opined that she was "no longer able to work in any capacity," and advised that she withdraw from work "on a permanent basis." Joint App'x at 864. She stopped working that year.

As a BDP employee, Ingravallo participated in the company's long-term disability plan (the "Plan"), which is governed by ERISA and administered by Hartford. The Plan defines "disability" as "Injury or Sickness" that "causes physical or mental impairment to such a degree of severity" that the claimant is "continuously unable to perform the Material and Substantial Duties of [her] Regular

---

[1] The facts as stated here are not disputed by the parties, except as otherwise noted.

Occupation" and is "not Gainfully Employed." *Id.* at 26 (emphasis omitted).  It grants Hartford "discretionary authority to determine [a claimant's] eligibility for and entitlement to benefits." *Id.* at 43.  Ingravallo duly applied for benefits under the Plan.

In September 2005, Hartford determined that the exacerbation of Ingravallo's symptoms rendered her disabled under the Plan and qualified her to receive long-term disability benefits.  In 2006, under applicable regulations, the Social Security Administration ("SSA"), too, determined that Ingravallo was disabled and qualified her for governmental benefits, which Ingravallo then began to receive.

Prompted by inconsistencies that it perceived between Ingravallo's then-recent accounts of her condition and the accounts provided by her treating neurologist, in late 2008 Hartford undertook a re-assessment of Ingravallo's eligibility for benefits.  Several months later, having obtained an updated peer review of her medical condition and two brief surveillance videos, covertly made, of Ingravallo performing chores outside her home, Hartford determined that Ingravallo no longer met the Plan's definition of "disabled."  In response to her request for an administrative review, Hartford sought an additional medical evaluation and Ingravallo submitted further input from her treating neurologist.  In 2010, Hartford upheld the denial.  In support of its detailed final decision it cited, among other factors, the opinions of its medical reviewers, inconsistencies in the reports of Ingravallo and her neurologist, observations derived from the surveillance video regarding her current functional capacities, and observations by an investigator who met with Ingravallo for several hours.

Ingravallo then sought judicial review of Hartford's decision.  On cross-motions for summary judgment on the administrative record, the District Court concluded that Hartford's denial of coverage was arbitrary and capricious and granted Ingravallo's motion for summary judgment and damages.  *See Ingravallo*, 2013 WL 1346283, at *9.  The Court pointed, for support, to three perceived errors in Hartford's determination: (1) that Hartford did not "provide a cogent reason for its disagreement with the [SSA]," *id.* at *7; (2) that Hartford's medical reviewers did not address "an important detail": the "presence of 'black holes' on Ingravallo's most recent MRIs," *id.* at *8; and (3) that, although "th[e] videos undoubtedly show Ingravallo doing things that she claimed not to be able to do," the videos "d[id] not constitute substantial evidence that she is able to [work]," *id.*

On appeal, Hartford contends that the District Court erred in this conclusion.  We agree.

3

**DISCUSSION**

In an ERISA action, "we review the district court's grant of summary judgment based on the administrative record *de novo* and apply the same legal standard as the district court." *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009). Where "written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." *Id.* (internal quotation marks omitted). An administrator's decision to deny benefits is arbitrary and capricious only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 83 (internal quotation marks omitted). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 141 (2d Cir. 2010) (internal quotation marks omitted). Ingravallo bears the burden of proving that she continues to be eligible for disability benefits. *See Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004). And, under the Plan, a claimant's "proof of loss" must comprise "[o]bjective medical findings," which include, but are not limited to, "tests, procedures, or clinical examinations standardly accepted in the practice of medicine." Joint App'x at 37.

Hartford first challenges the District Court's criticism that Hartford should have provided a more substantial explanation for its decision because it ran counter to the SSA's (unchanged) disability determination. Although we have "encourage[d] plan administrators, in denying benefits claims, to explain their reasons for determining that claimants are not disabled where the SSA arrived at the opposite conclusion," *Hobson*, 574 F.3d at 92, administrators are not bound by an SSA's award of benefits—as the District Court acknowledged. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833-34 (2003). Here, with respect to the SSA award, Ingravallo provided only a 2006 letter from the SSA informing her that it approved her application for disability benefits. Ingravallo presented no documents disclosing the basis for the SSA's decision. In addition, the record does not reflect that the SSA conducted any reevaluation of Ingravallo's condition after its initial award—with which Hartford agreed—in 2006. Unlike the District Court, we cannot fault Hartford for failing to discuss the SSA's position more substantially in its decision.

Hartford next attacks the proposition that Hartford's reviewers did not adequately address the presence of the "black holes" on images of Ingravallo's thoracic spine—objective findings noted by Ingravallo's neurologist and characterized by him as "correlate[ing] well with the degree of a

4

patient's disability." Joint App'x at 1191.  Although an administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician," courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker*, 538 U.S. at 834.  Here, although Ingravallo's treating neurologist assigned some weight to the "black holes" observed, neither he nor Ingravallo identified any evidence suggesting that the lesions demonstrated Ingravallo lacked the capacity to work.  Indeed, the significance of the treating physician's statement—that the lesions' presence "correlate[s] well with the degree of a patient's disability"—was unclear.  One of Hartford's peer reviewers noted the lesions' presence, but did not discuss them further.  We cannot agree on this record that the failure of Hartford's peer reviewers to account further for the lesions rendered Hartford's decision arbitrary and capricious.

Further, although the treating neurologist offered his general opinion again in 2009 that Ingravallo was not capable of returning to work, the administrative record contains sufficient contrary medical evidence, inadequately rebutted by Ingravallo, to support Hartford's decision.  For example, one peer reviewer noted that Ingravallo's "disease ha[d] been quiescent," and that, despite some abnormalities regarding her gait, her "cognitive function was normal." Joint App'x at 1177.  That reviewer concluded that Ingravallo was "reasonabl[y] capable of full time work at a sedentary level." *Id.* at 1178.  A second peer reviewer provided a similar, albeit more guarded, assessment.  He acknowledged that Ingravallo "ha[d] restrictions," and that she was "limited by fatigue due to weakness." *Id.* at 249.  But "[d]ue to a lack of medical information to support an inability to work," he also concluded that Ingravallo "should be able to work at the sedentary level." *Id.* at 250.  These assessments constituted "more than a scintilla" of evidence that Ingravallo no longer qualified as disabled within the meaning of the Plan.  *Durakovic*, 609 F.3d at 141.  Again, we note that Ingravallo bore the burden of establishing, through objective medical evidence, her continued inability to work.  *See Critchlow*, 378 F.3d at 256; Joint App'x at 37.  The evidence cited by Ingravallo does not vitiate the contrary opinions offered by Hartford's reviewers or render its decision arbitrary and capricious.

Last, Hartford argues that the District Court misunderstood the role of the surveillance videos in Hartford's decision-making process when the Court implied that the videos improperly served as a key predicate for the denial.  It contends that the videos served principally as the basis for Hartford's decision to re-assess Ingravallo's credibility, not for its ultimate decision.  It may be that these videos alone would not constitute substantial evidence demonstrating that Ingravallo was

no longer disabled. But the record is persuasive that Hartford's decision rested on far more than the surveillance videos. In its April 30, 2009 letter to Ingravallo, Hartford stated that it utilized "clinical information and the video surveillance" in its determination. Joint App'x at 137. It obtained assessments from two separate reviewers and a report from an investigator who interviewed Ingravallo for some two hours and thirty minutes. We cannot agree with the District Court that Hartford's decision was arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the April 19, 2013 judgment of the District Court and **REMAND** the cause with directions to enter judgment for Hartford.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

6